THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. RICHARD ADAMS, Defendant-Appellee.

Fifth District   No. 77-232

Opinion filed April 12, 1978.

Kelly D. Long, State's Attorney, of Hillsboro (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Peter K. Woody, of Gillespie, Cadigan & Gillespie, of Springfield, for appellee.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal by the State from an order entered by the circuit court of Montgomery County dismissing the cause for "want of prosecution." Defendant, Richard Adams, and a co-defendant, Paul Laird, were jointly charged by indictment filed on July 30, 1976, with the commission of official misconduct. Defendant was released on bail and was arraigned on August 5, 1976, and a pretrial conference was set for September 17, 1976. On August 6 and 7, 1976, defendant and the State filed motions for discovery. On September 16, 1976, Laird filed a discovery motion in

which he also demanded an immediate and speedy trial. On the following day, the scheduled pretrial conference was cancelled. On October 23, 1976, the cause was set for a jury trial for December 3, 1976. The record next shows that on December 7, 1976, defendant appeared ready for trial but that the cause was continued on motion by the State because of a jury trial in another matter. On December 8, 1976, the State filed an answer to the defendants' discovery motions. On December 30, 1976, a pretrial conference was held wherein the court ordered the defendants to comply with the State's discovery motion by January 5, 1977, and also set the cause for trial for March 3, 1977. On January 5, 1977, defendant filed an answer to the State's discovery motion.

On March 2, 1977, the day before the trial was to begin, the State filed a motion for a continuance alleging that a material witness had recently been located in California and could not return in time for trial. It also alleged that the State's Attorney who had assigned the trial of the case to himself, had been hospitalized from February 25, 1977, to March 1, 1977, and was not strong enough to try the case.

At pretrial proceedings on the following day, an Assistant State's Attorney appeared and requested a continuance for 60 days stating that the State's Attorney was still recovering from his recent illness and that he himself was unprepared to try the matter because of its complexity. He also stated that a witness had only recently been located and even with diligence could not appear in time for trial. Counsel for Laird moved to dismiss the charge against Laird on the ground that he had not been tried within 160 days from the date he had demanded trial. The prosecutor conceded that more than 160 days had passed but argued that delay had been caused by a certain complex question raised in Laird's discovery motion. Counsel for Laird responded that such could not have caused any delay since the question was left unanswered in the State's answer to the motion. The court granted Laird's motion and dismissed the charge against him. Counsel for defendant then moved to dismiss the charge against defendant for lack of prosecution by the State on the basis of defendant's constitutional right to a speedy trial. Counsel conceded that he had failed to previously file a demand for a speedy trial but argued that this was the second time defendant and his witnesses appeared ready for trial. He stated that the indictment was "playing on [defendant's] mind" and that another continuance would not only be costly for defendant but also psychologically debilitating. The court ruled that since the State was not ready to proceed with trial, the indictment would be dismissed for want of prosecution.

On appeal the State contends that the trial court erred in so ruling. The first approach taken by the State is the argument, citing *People v. Guido*, 11 Ill. App. 3d 1067, 297 N.E.2d 18, and *People v. Thomas*, 24 Ill. App. 3d

907, 322 N.E.2d 97, that the trial court lacked authority to dismiss an indictment on a ground not stated in section 114—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 114—1). However, subsequent to *Guido* and *Thomas*, our supreme court held to the contrary in *People v. Lawson*, 67 Ill. 2d 449, 455, 367 N.E.2d 1244, 1246, as follows:

> "We are aware of appellate court cases holding that the trial court may not dismiss an indictment for any reason other than the reasons given in section 114—1 of the Code of Criminal Procedure of 1963. (See, *e.g., People v. Shick* (1st Dist. 1968), 101 Ill. App. 2d 377, and *People v. Abel* (3d Dist. 1974), 21 Ill. App. 3d 314.) We are also aware of conflicting appellate court decisions. However, we believe that on the basis of the reasoning of our past decisions and that of the appellate courts and on the basis of the reasoning of the United States Supreme Court, we must conclude that a trial court does have an inherent authority to dismiss an indictment in a criminal case where there has been a clear denial of due process even though that is not a stated ground in section 114—1."

■■ The State attempts to distinguish *Lawson* on its facts and argues that the court's holding applies only to a due process violation caused by a pre-indictment delay but not, as here, by a post-indictment delay. However, we find such argument unpersuasive. As stated in *Lawson*: "Due process is a fundamental premise of our system of justice and is constitutionally guaranteed by the fourteenth amendment. It does not need enabling legislation." (67 Ill. 2d 449, 456, 367 N.E.2d 1244, 1247.) The obligation of a court to insure due process, and its inherent authority to dismiss an indictment to remedy a violation thereof, cannot be made to depend upon whether the violation occurred before or after the indictment was issued. Moreover, a court of law cannot stand back and tolerate a denial of due process merely because such is not a stated ground in section 114—1. Of course, where the claimed denial arises from delay, the factors to be considered by a trial court, in determining whether the delay amounts to a denial of due process, will change depending on whether the delay occurred before or after the accused was arrested. (Compare *People v. Lawson* and *United States v. Lovasco* (1977), 431 U.S. 783, 52 L. Ed. 2d 752, 97 S. Ct. 2044, with *Barker v. Wingo* (1972), 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182.) However, under the reasoning of *Lawson*, we find that once it has been determined that an accused has been denied due process because of post-indictment delay, a trial court has the inherent authority to dismiss the charge against the accused. We must therefore next consider whether defendant's right to a speedy trial was violated under the circumstances of the instant cause.

■■ In *Barker v. Wingo*, our United States Supreme Court has

formulated a balancing test for determining when the right to a speedy trial has been denied. The four factors to be considered are: length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. (407 U.S. 514, 530, 33 L. Ed. 2d 101, 116-17, 92 S. Ct. 2182, 2192.) With regard to the question of the length of the delay, the State would have us view its motion for a 60-day continuance separately from the previous seven-month delay between the date defendant was indicted until the date the indictment was dismissed. Thus the State next argues that a denial of its motion for a continuance was an abuse of discretion. However, as stated in *Barker v. Wingo*, in discussing at what point in time the right to a speedy trial is denied:

"If, for example, the State moves for a 60-day continuance, granting that continuance is not a violation of the right to speedy trial unless the circumstances of the case are such that further delay would endanger the values the right protects." (407 U.S. 514, 521-22, 33 L. Ed. 2d 101, 114, 92 S. Ct. 2182, 2187.)

Clearly, where the further delay does endanger the values the right protects, the granting of the State's motion for a 60-day continuance would constitute a violation of the accused's right to a speedy trial. Consequently, it must be concluded in the case at bar, that the granting or denial of the State's motion for a 60-day continuance is inextricably bound to the factor of delay and the question of defendant's right to a speedy trial, and cannot be viewed in isolation therefrom. Thus our analysis must start from the perspective that in addition to the seven month delay prior to March 3, 1977, the State asserted on that day that it would not be ready to proceed with trial for another 60 days; its request for continuance was accompanied by no showing of diligence in locating the prospective witness, nor by an assurance that the witness would be present at a later date.

■■■ Two reasons have been presented by the State to justify the delay herein. The first of these reasons was the illness of the State's Attorney. He was hospitalized on February 25, 1977, and was released four days later, two days before trial. A State's Attorney's illness has been held insufficient to justify a delay of trial where a defendant asserts his statutory right to a speedy trial. (*People v. Hatchett*, 82 Ill. App. 2d 40, 226 N.E.2d 97.) We see no reason for a State's Attorney's illness to have a different effect merely because the defendant asserts the broader constitutional right. Moreover, the illness in fact does not explain or justify the delay before the date the State's Attorney was hospitalized nor does it explain or justify the lengthy 60-day period requested by the State in its motion for a continuance. The second reason presented by the State is a missing witness, Donald Greene, who, it was asserted, had only been recently located and could not appear in time for trial. The record shows that

Greene, an investigator for the State, had interviewed defendant in connection with the crime charged, and had interviewed other witnesses. All such interviews were conducted in the presence of one or more other investigators. The record also shows that on December 8, 1976, the State, and on January 4, 1977, co-defendant Laird, each listed Greene as a possible witness in the answers to discovery and each listed his address. It would thus appear that sometime thereafter contact with Greene was lost. The record, however, is barren of any evidence of when the State discovered the absence of the witness or of what steps were taken to locate him. The State knew on December 30, 1976, that this cause would commence trial on March 3, 1977. Under these circumstances it cannot be concluded that delay was justified. While defendant does not suggest that the delay herein was a deliberate attempt by the State to hamper his defense, the ultimate responsibility for the delay rests, nonetheless, with the State.

Turning to the consideration of defendant's assertion of his right, no such demand for a speedy trial was made until the March 3 proceeding. Clearly had defendant made the demand at the time his co-defendant had, he too would have been entitled to a discharge under statute as had Laird. However, it should be emphasized that defendant did not wholly fail to assert his right, but had done so when the State moved for an additional 60-day delay. The March 3 demand for trial provides a measure of the seriousness of the deprivation of defendant's right. As stated in *Barker v. Wingo*: "The more serious the deprivation, the more likely a defendant is to complain." 407 U.S. 514, 531, 33 L. Ed. 2d 101, 117, 92 S. Ct. 2182, 2192.

Finally, we must consider whether defendant was prejudiced by the delay. The court in *Barker v. Wingo* identified three interests by which prejudice may be assessed: to prevent oppressive pretrial incarceration; to minimize anxiety of the accused; and to limit the impairment of the defense. (407 U.S. 514, 532, 33 L. Ed. 2d 101, 118, 92 S. Ct. 2182, 2193.) Of these, defendant asserted at the March 3 proceeding that the prior delay and particularly any further delay resulted in excessive anxiety by defendant. Defendant stated that he had appeared at the March 3 proceeding with his witnesses prepared for trial and that such was the second time he had so appeared. He stated that any further continuance was psychologically debilitating for him as well as costly.

■■ The lower court dismissed the indictment on March 3 upon the representation by the State that it was not ready to proceed with trial and would not be so for another 60 days. Implicitly the court found in favor of defendant when it measured the defendant's demand of an immediate trial and personal reasons for making the demand against the considerations offered by the State to justify the delay. Clearly in speedy

trial cases, each such case must be judged by its own particular circumstances, and here we find the circumstances present a close case. It must be noted that no question is presented by the record that defendant gained or sought any advantage or benefit by the seven-month delay prior to the March 3 proceeding. At the end of this period, when confronted with an additional 60-day delay, defendant made a demand for a speedy trial to avoid any further anxiety caused by the delay. When viewed in context of the request for an additional 60-day delay, we can find no error in the lower court's dismissal of the indictment.

We note the State's assertion, citing *People v. Thomas*, 24 Ill. App. 3d 907, 322 N.E.2d 97, that upon denial of the State's motion for a continuance, the lower court should have called the case for trial and if no evidence or insufficient evidence were presented by the State, then a judgment of acquittal should have been entered. *Thomas*, however, as previously mentioned, must be read in light of its further holding that trial courts are without inherent authority to dismiss a charge on grounds other than those stated in section 114—1. In any event, in light of our affirmance of the instant cause, either a judgment of acquittal or a dismissal of the charge can make little practical difference to the State.

For the foregoing reasons, we affirm the judgment of the circuit court of Montgomery County dismissing the charge against defendant.

Affirmed.

G. J. MORAN and KARNS, JJ., concur.