*In re* M.A., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. M.A., Respondent-Appellant).

First District (5th Division)   No. 83—226

Opinion filed March 22, 1985.

Steven Clark and Elizabeth Clarke, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Robert W. Bertucci, Assistant State's Attorney, of counsel), for the People.

PRESIDING JUSTICE MEJDA delivered the opinion of the court:

A petition was filed on June 11, 1981, against respondent M.A., then a minor 15 years of age, to adjudicate him a delinquent ward of the court. The minor was held in custody for 15 days, from June 10, 1981, until June 25, 1981. He filed a written demand for a speedy hearing on December 2, 1981. The adjudicatory hearing was held on November 17, 1982, at which respondent was adjudicated a delinquent ward of the court. Thereafter, on January 12, 1983, he was placed on

probation for three years. He appeals.

Respondent contends that: (1) the 17-month delay in prosecuting the case actually and substantially prejudiced his case in violation of his due process rights; (2) section 4—2 of the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, pars. 701—1 *et seq.*, 704—2) provides for a hearing within 30 days, so the court's refusal to dismiss the petition was error; (3) he was denied equal protection when the court failed to dismiss the petition in accordance with the speedy trial rule for adults (Ill. Rev. Stat. 1983, ch. 38, par. 103—5); and (4) the court erred in refusing to dismiss the petition in accordance with his common law right to a speedy hearing.

The pertinent facts are as follows. The public defender was appointed to represent the respondent upon filing of the petition on June 11, 1981. On June 25, the public defender was allowed to withdraw and private counsel was appointed for respondent. On motion of the State, a continuance was granted until August 27, and then, on that date, until December 2, 1981. On December 2, respondent filed a motion to dismiss because of the delay and the hearing was continued by the court until January 18, 1982. Then, the motion was heard and denied and the case was continued by the court until February 8, 1982. At that time, the State requested a continuance because the victim was in Mississippi attending a funeral. On the next date, June 18, 1982, the victim was again absent and the State's motion to s.o.l. (motion to strike with leave to reinstate) was granted. Two weeks later, July 2, 1982, the State moved to reinstate the case on the representation that the victim was late on June 18 and had been in the washroom and the waiting room while the case was before the court. The court granted the motion to reinstate and continued the case until August 25, 1982.

On August 25, respondent presented a motion to dismiss on the basis of the delay. The State advised the court that the victim was unable to be present because she was ill and had been taken to the doctor, and requested that a trial date be set as soon as possible. The court indicated that it needed time to review respondent's motion; respondent's counsel replied, "I have no objection your Honor, for the Court taking as much time as it wants to. I have raised some serious questions of law." The court then continued the case on its own motion, until September 3.

On that day, the case was continued on order of court until September 23. Then, the case was continued by agreement until November 17. On that date, respondent's counsel withdrew his motion to dismiss on speedy trial grounds and stated that respondent was ready

for trial that day. An adjudicatory hearing was then held and respondent was adjudicated a delinquent ward of the court on November 17, 1982.

OPINION

■ Respondent's first argument on appeal is that he was actually and substantially prejudiced by the 17-month delay in prosecuting the case and that the delay, 14 months of which were attributable to the State, violated his due process rights. He relies on this court's opinion in *In re C.T.* (1983), 120 Ill. App. 3d 922, 458 N.E.2d 1089, which held that a juvenile court has the authority to dismiss a petition where the minor's due process rights have been violated due to a delay in holding an adjudicatory hearing. The State responds to this argument by noting that respondent has not shown that he was caused actual and substantial prejudice because of the delay. *People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244.

It is well-settled law that a mere continuance, without more, cannot be said to substantially prejudice a defendant or respondent. (*In re C.T.* (1983), 120 Ill. App. 3d 922, 458 N.E.2d 1089; *People v. Gerena* (1978), 63 Ill. App. 3d 960, 380 N.E.2d 985.) Respondent requests that this court expand *C.T.* to allow dismissal of petitions based upon a *per se* violation of the right to a speedy trial. In other words, we are asked to hold that at some point a delay becomes so impermissible that the only remedy is dismissal.

The kind of *per se* test requested by the respondent is not consistent with the holdings of either this court (*In re C.T.* (1983), 120 Ill. App. 3d 922, 458 N.E.2d 1089), or the Illinois Supreme Court (*People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244). Illinois courts have consistently held that a showing of actual and substantial prejudice is essential before a petition can be dismissed by the trial court. A mere continuance does not justify dismissal.

■ Respondent's next contention is that the trial court erred in refusing to dismiss the petition, since section 4—2 of the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 704—2) provides for an adjudicatory hearing within 30 days. The State, relying on *In re Armour* (1974), 59 Ill. 2d 102, 319 N.E.2d 496, points out that the legislature's use of the word "shall" in providing for the setting of an adjudicatory hearing within 30 days is directory, not mandatory.

A review of the appellate court opinion in *In re Armour* (1973), 15 Ill. App. 3d 529, 305 N.E.2d 47, *aff'd* (1974), 59 Ill. 2d 102, 319 N.E.2d 496, shows that the petitions against the respondent were filed on July 3, 1971. An adjudicatory hearing was set for August 4,

1971, 32 days from the date the petitions were filed. A total of 16 continuances were granted, and the adjudicatory hearing was not actually held until February 29, 1972, being 241 days after the petitions were filed. It was respondent's contention in *Armour* that the juvenile court lost its jurisdiction by failure to comply with section 704—2 of the Juvenile Court Act. (Ill. Rev. Stat. 1971, ch. 37, par. 701—1 *et seq.*) In analyzing the statutory language, the appellate court emphasized that the express purpose of the Act included securing for each minor subject to the Act such care and guidance, preferably at home, as will serve his or her moral, emotional, mental, and physical welfare, as well as the best interests of the community. See Ill. Rev. Stat. 1983, ch. 37, par. 701—2.

The appellate court in *Armour* went on to state:

"[I]t is our opinion that construing the word 'shall' as merely directory is more in accord with the salient purpose of the Juvenile Court Act. The entire concept of rehabilitation and guidance would be thwarted if the juvenile division of the circuit court lost jurisdiction over a wayward youth by setting the adjudicatory hearing 32 days instead of 30 days as called for by the statute. It is the appellant's contention that section 704—2 is the speedy trial provision of the Act. This court agrees that a prompt determination of a minor's status is one of the purposes of the Act but we cannot agree that mere speed should outweight [*sic*] the predominate purpose of the Act—the welfare of the minor.

\* \* \*

The threat of the loss of liberty should not indefinitely hang over a minor's head, but the objectives of the Juvenile Court Act are understanding, guidance and protection and these objectives should not be lost to mere speed. It is the opinion of this court that the language of the first sentence of section 704—2 of the Juvenile Court Act was intended as a direction and a guide to the juvenile division of the Circuit Court in order to secure and promote the purposes of the Act. The Act was intended to aid and protect the juvenile and society and to do so in as expeditious a manner as possible." (*In re Armour* (1973), 15 Ill. App. 3d 529, 536, 305 N.E.2d 47, 51.)

Accordingly, the court held that the language in section 704—2 was not mandatory.

The Illinois Supreme Court affirmed the appellate court decision. (*In re Armour* (1974), 59 Ill. 2d 102, 319 N.E.2d 496.) Like the appellate court, the supreme court emphasized the purposes of the statute:

"Society is interested for its own sake as well as for the minor's individual welfare in guiding and rehabilitating. These interests cannot always be served by a mechanical adherence to rote or formula. \*\*\*. We do not consider that the legislature intended that should an adjudicatory hearing not be held precisely within 30 days that the minor should be discharged or be abandoned, as it were, and that society's effort to correct, to rehabilitate and to guide should come to a halt." (*In re Armour* (1974), 59 Ill. 2d 102, 104-05, 319 N.E.2d 496, 498.)

In light of the plain language in *Armour*, respondent's contention must fail. Accordingly, the failure to hold an adjudicatory hearing in the instant case within 30 days did not require dismissal of the petition.

■ The third contention raised by respondent on appeal is that he was denied equal protection by the trial court's refusal to dismiss the petition in accordance with the speedy trial act for adults (Ill. Rev. Stat. 1983, ch. 38, par. 103—5). The State responds by arguing that the delay in this case was reasonable and a significant portion of the delay was attributable to the respondent.

We need not resolve which aspects of the delay were attributable to each party since the Speedy Trial Act is not applicable to juvenile court proceedings. (*People v. Woodruff* (1981), 88 Ill. 2d 10, 430 N.E.2d 1120.) As stated in *Woodruff*, "[C]learly, a proceeding under the Juvenile Court Act is distinct and different from a criminal prosecution, and the provisions of the [Juvenile Court] Act apply exclusively to juvenile offenders until such time as the court authorizes criminal prosecution." (88 Ill. 2d 10, 18, 430 N.E.2d 1120, 1124.) Although section 4—2 (referred to above as section 704—2 in *Armour*) has been amended by Public Act 83—1517 to provide for dismissal of a petition where an adjudicatory hearing is not held within 120 days of a written demand for such hearing, the amendment is specifically not effective until July 1, 1985. (9 Ill. Leg. Serv. (1984), Pub. Act 83—1517, at 57-76.) Accordingly, the amendment is not applicable in the instant case. Since criminal and juvenile proceedings are separate and distinct under the present Illinois case law and statutes, respondent's equal protection argument is without merit.

■ Finally, the minor contends that the trial court erred in refusing to dismiss the petition because of his common law right to a speedy trial. We disagree. The rights a minor has to a speedy trial derive from the Juvenile Court Act and cases interpreting it. Respondent has not established under existing authorities that the trial court erred in denying his petition to dismiss.

For the foregoing reasons, the circuit court's findings of delinquency and disposition are affirmed.

Affirmed.

LORENZ and SULLIVAN, JJ., concur.